UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Thomas Massey, Kayce Lee Massey,        :
and Rave Enterprises, Inc.,             :
d/b/a The Rave,                         :
           Plaintiffs,             :
                                   :
           v.                      : Case No. 2:03-CV-253
                                   :
Peter Deslauriers, City of              :
St. Albans, Joshua B. Tate,             :
Roland Webb, Clifford                   :
Patterson, Jason Stoddard, and          :
St. Albans City Police                  :
Department,                             :
           Defendants.             :

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Papers 33 & 34)

Plaintiffs Thomas Massey, Kayce Lee Massey, and Rave Enterprises, Inc., d/b/a The Rave (collectively "the Masseys") filed this action under 42 U.S.C. § 1983 against defendants Peter Deslauriers, the City of St. Albans, Joshua B. Tate, Sergeant Roland Webb, Clifford Patterson, the Chief of the St. Albans Police Department, Sergeant Jason Stoddard, and the St. Albans City Police Department (collectively "the city defendants").  The Masseys allege that the city defendants violated various rights under the Fourth, Sixth, and Fourteenth Amendments.  They seek compensatory and punitive damages.  The case is currently

before the Court on the city defendants' motion for summary judgment and the Masseys' motion to amend the complaint.

For the following reasons, I recommend that this Court GRANT the city defendants' motion for summary judgment. (Paper 34).  In addition, the motion to amend (Paper 33) is DENIED.

## Background

1. The Good Stuff Store

Unless otherwise noted, the following facts are undisputed.  Kayce Massey owned a store known as Good Stuff during the summer of 1999.  (Paper 35, ¶ 2; Paper 44, ¶ 2). The store was located in the city of St. Albans, and sold, among other things, graphic sexual movies, sex toys, and paraphernalia such as water pipes and rolling papers. (Paper 35, ¶¶ 2 & 4; Paper 44, ¶¶ 2 & 4).  About one year after the store opened, Kayce Massey transferred ownership of the store to her father, Thomas Massey.  (Paper 35, ¶ 3; Paper 44, ¶ 3).

Shortly after the store opened, Thomas Massey was asked to attend a town meeting concerning the store.  (Paper 35, ¶ 6; Paper 44, ¶ 6).  Several residents came to the meeting and complained about the merchandise available in the store.

2

(Paper 35, ¶¶ 8 & 9; Paper 44, ¶¶ 8 & 9). Thomas Massey agreed not to let children into the store, and agreed to wall off certain portions of the store. (Paper 35, ¶ 10; Paper 44, ¶ 10).

Good Stuff is located near a location that the St. Albans police use to monitor speeding. (Paper 35, ¶16; Paper 44, ¶ 16). When police officers would pull people over for speeding, the cars would sometimes pull into the Good Stuff parking lot. (Paper 35, ¶¶ 12, 16, & 17; Paper 44, ¶¶ 12, 16, & 17). The police officers took no action to prevent other people from entering Good Stuff when they had pulled over a car for speeding. (Paper 35, ¶ 15; Paper 44, ¶ 15).

Not long after Good Stuff opened, there was a break-in. (Paper 35, ¶ 22; Paper 44, ¶ 22). Thomas Massey testified during his deposition that an alarm went off at the time of the break-in, but the police failed to investigate. (Paper 35, Ex. C at 67-68). He testified during his deposition that, when he called the police later, the dispatcher told him, "yeah, well, we forgot to come to that." (Id.). The police subsequently did investigate the break-in and arrested the perpetrators. (Paper 35, ¶ 25; Paper 44, ¶

25).

   2.   <u>The Rave Bar</u>

   Thomas Massey was also the owner and operator of a bar
known as The Rave, located in St. Albans.  (Paper 35, ¶ 28;
Paper 44, ¶ 28).  Kayce Massey began managing The Rave in
July 2002.  (Paper 35, ¶ 29; Paper 44, ¶ 29).  Thomas Massey
sold both The Rave and the building in which The Rave was
located at a profit in 2004.  (Paper 35, ¶¶ 32-33; Paper 44,
¶¶ 32-33).

   On October 2, 2002, the Vermont Department of Labor and
Industry conducted an inspection of The Rave.  (Paper 35, ¶
34; Paper 44, ¶ 34).  On October 4, 2002, the Vermont
Department of Labor and Industry sent Thomas Massey a letter
outlining numerous fire code violations committed by The
Rave.  (Paper 35, ¶ 35; Paper 44, ¶ 35).  He believes that
he was kept to a higher standard than other bar owners in
the town, but admits that none of the violations was unfair,
and that he did everything he was asked to do to correct the
violations.  (Paper 44, ¶ 38).

   St. Albans has a winter parking ban that runs from 1:00
a.m. to 6:00 a.m.  (Paper 35, ¶ 46; Paper 44, ¶ 46).  The
parking ban is not strictly enforced; the city defendants

assert that the ban is enforced only if time allows, and nothing more pressing requires the attention of the police department, while the Masseys argue that enforcement is discretionary.  (Paper 35, ¶ 44; Paper 44, ¶ 44).  Customers and employees of The Rave were issued tickets for violating the winter parking ban on two occasions: on December 27, 2003, between 2:42 a.m. and 2:49 a.m., and on January 23, 2004, at 1:08 a.m.  (Paper 35, ¶¶ 49-51; Paper 44, ¶¶ 49-51).  In addition, Kayce Massey was ticketed in front of her home on January 6, 2003.  (Paper 35, ¶¶ 53-54; Paper 44, ¶¶ 53-54).  At the time, her car was parked against the flow of traffic.  (Paper 35, ¶ 54; Paper 44, ¶ 54).  She paid the ticket without dispute.  (Paper 35, ¶ 55; Paper 44, ¶ 55).  She testified, however, that the police did not generally write tickets for cars parked on the same streets as those that received tickets, and that only patrons and employees of The Rave received tickets.  (Paper 44, ¶ 54).

In or about October 2002, a wet t-shirt contest was held at The Rave.  (Paper 35, ¶ 56; Paper 44, ¶ 56).  Sixteen people participated in the contest, which lasted 15-30 minutes.  (Paper 35, ¶¶ 57-58; Paper 44, ¶¶ 57-58).  The participants were organized into sets of three dancers, and

Kayce Massey instructed them not to remove their clothing before the dancing began.[1]  (Paper 35, ¶¶ 59-60; Paper 44, ¶¶ 59-60).  The participants were sprayed with water while they danced.  (Paper 35, ¶ 61; Paper 44, ¶ 61).  The contest proceeded through four or five sets of dancers.  (Paper 35, ¶ 63; Paper 44, ¶ 63).  During the fourth set, a participant lifted her shirt to expose her bare breasts.  (Paper 35, ¶ 64; Paper 44, ¶ 64).  Thomas Massey was present in the bar at the time, carding people at the door.  (Paper 35, ¶ 66; Paper 44, ¶ 66).  Kayce Massey asked or told the woman to put her shirt down, and the dancing continued.  (Paper 35, ¶¶ 65-66; Paper 44, ¶¶ 65-66).  Approximately thirty seconds later, the same dancer again lifted up her shirt, exposing her bare breasts.  (Paper 35, ¶ 67; Paper 44, ¶ 67).  The dancer was again told to put her shirt down, and the contest continued.  (Paper 35, ¶ 68; Paper 44, ¶ 68).  The contest ended a short time later, and the dancer who had exposed herself was declared the winner.  (Paper 35, ¶ 69; Paper 44, ¶ 69).

On October 14, 2002, Chief Patterson was approached at a public meeting about a complaint of public nudity, and was

---

[1] The city defendants admit this fact for the purposes of this motion only.

6

given photographs of the wet t-shirt contest.  (Paper 35, ¶¶ 70-71; Paper 44, ¶¶ 70-71).  Patterson began an investigation to determine the identity of the woman depicted in the photograph, and learned her identity on or about October 24, 2002.  (Paper 35, ¶¶ 72-74; Paper 44, ¶¶ 73-74).  On or about November 1, 2002, Patterson turned the investigation over to Sergeant Webb.  (Paper 35, ¶ 75; Paper 44, ¶ 75).  When Webb's investigation was finished, Patterson instructed him to issue Thomas Massey a citation for public indecency.  (Paper 35, ¶ 80; Paper 44, ¶ 80).

On January 8, 2003, the City Attorney issued an information charging Thomas Massey with violating the public indecency ordinance.  (Paper 35, ¶ 90; Paper 44, ¶ 90).  Specifically, he was charged with knowingly allowing the participant in the wet t-shirt contest to appear in a state of nudity in The Rave.  (Paper 35, ¶¶ 90, 92, Ex. O; Paper 44, ¶¶ 90, 92).  On January 10, 2003, a Vermont District Judge found that probable cause to support the information existed.[2]  (Paper 35, ¶ 91 & Ex. O; Paper 44, ¶ 91).  On June 27, 2003, the Vermont District Court granted Thomas

---

[2] The Masseys do dispute whether the City actually had probable cause to support the charge; nevertheless, the undisputed evidence is that a judge found that probable cause existed.  (Paper 44, ¶ 91; Paper 35, Ex. O).

7

Massey's motion to dismiss, based on the fact that the State failed to present any evidence that he knowingly permitted the nudity to occur.  (Paper 35, ¶ 95, Ex. Q; Paper 44, ¶ 95).

   3.   The Assault/Disorderly Conduct Charge

   On January 11, 2003, Thomas Massey was involved in an altercation with a patron of The Rave.[3]  (Paper 35, ¶ 98). As a result of the altercation, Defendant Tate swore out an affidavit in support of a citation, and Thomas Massey was issued a citation for assault.  (Paper 35, ¶ 99; Paper 44, ¶ 99).  Officer Tate was a witness to the incident, and took statements from several witnesses as well.  (Paper 35, ¶¶ 99-100; Paper 44, ¶¶ 99-100).  An information charging Thomas Massey with disorderly conduct was issued on February 19, 2003.  (Paper 35, ¶ 101; Paper 44, ¶ 101).  The other party involved in the altercation was also charged with disorderly conduct.  (Paper 35, ¶ 102; Paper 44, ¶ 102).

   A Vermont District Court judge found probable cause to support the information on February 21, 2003.[4]  (Paper 35, ¶

_____

   [3] Thomas Massey did not dispute this fact in his statement, but characterized the incident as being "attacked by a patron of The Rave."  (Paper 44, ¶ 98).

   [4] Thomas Massey disputes that probable cause actually existed, arguing that Officer Tate lied in his affidavit,

103 & Ex. 5).   Thomas Massey filed a motion to dismiss the information on April 17, 2003, arguing that he was acting in self-defense, but the motion was denied when the District Court ruled that self-defense was an issue for trial, not for the charge.   (Paper 35, ¶¶ 104-05; Paper 44, ¶¶ 104-05). The charge against Thomas Massey was dismissed by the State without prejudice after he agreed to pay a donation to Voices Against Violence.   (Paper 35, ¶¶ 106-07; Paper 44, ¶¶ 106-07).

   4.  Walk Throughs of The Rave

   The City of St. Albans began to have police officers walk through several of the more popular city bars, including The Rave.   (Paper 35, ¶ 109; Paper 44, ¶ 109). The City alleges that the purpose of the walk throughs was crime prevention and deterrence.   (Paper 35, ¶ 110).   Thomas Massey asserts that the purpose was to harass himself and his customers.   (Paper 44, ¶ 110).   He does not deny that police officers have a right to enter his bar, but argues that the conduct of both Sergeant Stoddard and Officer Tate was harassing and intimidating during the walk throughs, and he therefore should have been able to keep those officers

_____

and that he was only defending himself during the altercation.   (Paper 44, ¶ 103).

out of The Rave.   (Paper 35, ¶ 111-14; Paper 44, ¶¶ 111-15).
He does not dispute that Sergeant Stoddard never yelled at
or threatened anyone in The Rave.   (Paper 35, ¶ 116; Paper
44, ¶ 116).

    5.   <u>The Rave's Liquor License</u>

    In February 2003, Thomas Massey applied for a renewal
of The Rave's liquor license.   (Paper 35, ¶ 125; Paper 44, ¶
125).   The renewal license application was sent to officials
with the State of Vermont and the City of St. Albans.
(Paper 35, ¶ 127; Paper 44, ¶ 127).   Defendant Deslauriers,
the Mayor of St. Albans, is also the chair of the City of
St. Albans Liquor Control Board.   (Paper 35, ¶ 126; Paper
44, ¶ 126).   On April 4, 2003, Thomas Massey received a
letter from the City of St. Albans informing him that the
Liquor Control Board had disapproved the license renewal for
The Rave.   (Paper 35, ¶ 132; Paper 44, ¶ 132).   The Rave's
liquor license was ultimately renewed by the State, the
license was never suspended, and The Rave was not shut down.
(Paper 35, ¶¶ 135-138; Paper 44, ¶¶ 135-38).


## Summary Judgment Standard

    Summary judgment should be granted when "there is no

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), or "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" <u>Konikoff v. Prudential Ins. Co. of Am.</u>, 234 F.3d 92, 97 (2d Cir. 2000)(quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" <u>O'Hara v. Weeks Marine, Inc.</u>, 294 F.3d 54, 61 (2d Cir. 2002)(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

"When determining whether there is a genuine issue of fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." <u>Winter v. United States</u>, 196 F.3d 339, 346 (2d Cir. 1999). As to any claim or essential element for which the non-moving party bears the burden of proof at trial, the non-moving party must make a showing sufficient to establish the existence of that claim

or element. <u>Tops Mkts., Inc. v. Quality Mkts., Inc.</u>, 142
F.3d 90, 95 (2d Cir. 1998)(citing <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 324 (1986); <u>DiCola v. SwissRe Holding, Inc.</u>,
996 F.2d 30, 32 (2d Cir. 1993)).  "Credibility assessments,
choices between conflicting versions of the events, and the
weighing of evidence are matters for the jury, not for the
court on a motion for summary judgment." <u>Fischl v. Armitage</u>,
128 F.3d 50, 55 (2d Cir. 1997).

Summary judgment is mandated, however, "after adequate
time for discovery and upon motion, against a party who
fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and
on which that party will bear the burden of proof at trial."
<u>Celotex</u>, 477 U.S. at 322.

## <u>Discussion</u>

### <u>Motion for Summary Judgment</u>

The Masseys assert several claims under Section 1983
and Section 1985.  They assert two claims for unlawful
arrest, one stemming from Thomas Massey's citation for
disorderly conduct, and one stemming from his citation for
public indecency.  In addition, they assert claims for
violations of the equal protection clause, based on

selective prosecution of the public indecency charge, the
handling of the liquor license renewal, and various other
incidents.  The Masseys also assert a general claim for
harassment as well as a claim for conspiracy to violate
their constitutional rights.  Finally, the Masseys assert a
claim for negligence and negligent supervision.  Each claim
will be dealt with in turn.

   A. <u>Unlawful Arrest</u>

   A claim of unlawful arrest under Section 1983 is based
on the Fourth Amendment right to be free from unreasonable
seizures.  <u>Kent v. Katz</u>, 312 F.3d 568, 573 (2d Cir. 2002).
Under both federal and Vermont law, a claim of unlawful
arrest may not be brought if probable cause existed at the
time of the arrest.  <u>Id.</u>; <u>Long v. L'Esperance</u>, 166 Vt. 566,
571 (1997).  In this case, the Vermont District Court found
that probable cause existed to support both the citation for
public indecency and the citation for disorderly conduct.
(Paper 35, Ex. O & Ex. S).  A finding of probable cause on
an information by the Vermont District Court does not end
the inquiry, however, because that decision is subject to
reconsideration.  <u>Kent</u>, 312 F.3d at 574.  Instead, probable
cause exists when, looking at the totality of the

circumstances, "the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." <u>Kent v. Katz</u>, 327 F. Supp. 2d 302, 306 (D. Vt. 2004).  Probable cause does not require absolute certainty, however.  <u>Boyd v. City of New York</u>, 336 F.3d 72, 76 (2d Cir. 2003).

Thomas Massey first challenges his citation for assault.[5]  He argues that Officer Tate lied in his affidavit in support of the citation when Officer Tate stated that he observed Thomas Massey hitting Nicholas Chates.  Thomas Massey argues that this allegation creates a disputed issue of fact, requiring the denial of the city defendants' motion for summary judgment as to Count 1.  He asserts that the other witnesses referred to in the affidavit were friends with Chates.

Under Vermont law, a person is guilty of simple assault when he "attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or negligently

---

[5] He was originally cited with assault, but that charge was changed to one of disorderly conduct.  The initial affidavit in support of the citation, which was completed on January 12, 2003, refers to a charge of disorderly conduct, not assault.  (Paper 35, Ex. R).

14

causes bodily injury to another with a deadly weapon; or

attempts by physical menace to put another in fear of

imminent serious bodily injury."   13 V.S.A. § 1023.

Disorderly conduct is also proscribed by statute.

> A person who, with intent to cause public
> inconvenience, or annoyance or recklessly creating
> a risk thereof:
>
>     (1) Engages in fighting or in violent,
> tumultuous or threatening behavior; or
>
>     (2) Makes unreasonable noise; or
>
>     (3) In a public place uses abusive or obscene
> language; or
>
>     (4) Without lawful authority, disturbs any
> lawful assembly or meeting of persons; or
>
>     (5) Obstructs vehicular or pedestrian traffic,
> shall be imprisoned for not more than 60 days or
> fined not more than $ 500.00 or both.

13 V.S.A. § 1026.

Thomas Massey was involved in an altercation in St.

Albans at approximately 2:19 a.m.  Because he alleges that

Officer Tate lied about his own observations, the Court must

disregard that statement and consider whether probable cause

existed to arrest him absent those observations.  Officer

Tate took a sworn statement from Michael S. Garey, a bouncer

at The Rave.  (Paper 35, Ex. R).  Garey stated that Chates

and his friends had been yelling insults at Thomas Massey,

and that Chates had run at Thomas Massey's truck and struck him through the window. (Id.)  Garey stated that Thomas Massey exited the truck, Chates continued throwing punches, and Thomas Massey pushed him to the ground. (Id.).  Officer Tate also took statements from two of Chates's friends, who stated that Chates, the two friends, and Thomas Massey had been exchanging insults when Thomas Massey was stopped at the corner. (Id.).  These statements were sufficient probable cause to believe that both Thomas Massey and Chates had committed disorderly conduct.

There may also have been sufficient probable cause to cite Thomas Massey with assault, because of Garey's statement that Thomas Massey pushed Chates.  Even assuming that statement is not sufficient probable cause for the assault citation, several courts have held that the existence of probable cause to make an arrest on one charge is sufficient to refute a charge of unlawful arrest on another, related charge. See, e.g., Rowe v. City of Rochester, 2002 U.S. Dist. LEXIS 25519, *32-*33 (W.D.N.Y. 2002); Lieberman v. Dudley, 1998 U.S. Dist. LEXIS 16809, *5 n.1 (D. Conn., Jul. 27, 1998); Luthe v. City of Cape May, 49 F. Supp. 2d 380, 390-91 (D.N.J. 1999).  These cases reason

that "probable cause requires only a probability or substantial chance of criminal activity. But a finding of probable cause is not contingent on whether the officer articulated the correct basis for the arrest." Rowe, 2002 U.S. Dist. LEXIS at *33 (quoting Lieberman, 1998 U.S. Dist. LEXIS at *5 n.1).  This reasoning is persuasive, and I therefore recommend that this Court grant the city defendants' motion for summary judgment as to Count 1.[6]

Thomas Massey also challenges his citation for public indecency.  He was issued a citation for public indecency, based on the wet t-shirt contest that occurred at The Rave in October 2002.  The St. Albans public indecency ordinance provides:

(a) No person shall knowingly or intentionally, in a public place:

---

[6] Officer Tate argues that he would be entitled to qualified immunity on this claim, because it was objectively reasonable to arrest Thomas Massey for disorderly conduct. See Wachtler v. County of Herkimer, 35 F.3d 77, 80-81 (2d Cir. 1994) (when officer had probable cause to arrest defendant for a traffic violation, the officer was entitled to qualified immunity, because it was objectively reasonable to arrest defendant, even if officer cited the wrong crime in the arrest).  The Masseys allege that Officer Tate lied about what he saw, however.  All factual disputes must be resolved in favor of the Masseys on this motion.  If Officer Tate did lie about what he saw, it would not be objectively reasonable for him to arrest Thomas Massey.  Officer Tate is therefore not entitled to qualified immunity.

17

(1) engage in sexual intercourse;

(2) appear in a state of nudity;

(3) fondle his/her genitals;

(4) fondle the genitals of another person.

(b) No person who owns, leases, or otherwise controls or exhibits a proprietary interest over property shall knowingly allow any person to engage in the conduct described in subparagraph (a) above at any time such property is open to the public.

(Paper 35, Ex. P). He was charged under section (b). It is undisputed that he was the owner of The Rave, that The Rave held a wet t-shirt contest, that he was present during the contest, and that nudity occurred during the contest. The only question, then, is whether probable cause existed to believe that he knowingly permitted the nudity to occur.

During the course of his investigation, Sergeant Webb interviewed several people who were present at the contest, as well as Kayce Massey. (Paper 35, Ex. M). At least one participant stated that nothing was done to prevent her or the other participants from exposing themselves. (Id.). The boyfriend of the participant who exposed herself repeatedly was also interviewed. (Id.). He stated that at least one other woman had also exposed herself during the contest. (Id.). Sergeant Webb also discovered that the

participant who exposed herself repeatedly won the contest, and was awarded a prize of $100.  (Id.).  Finally, Sergeant Webb was given three photographs from the contest.  (Paper 35, Ex. L).  From those photographs, Sergeant Webb concluded that at least one participant exposed herself for a prolonged period of time.  (Paper 35, Ex. M).  As a result of his investigation, Sergeant Webb concluded that there was probable cause to believe that Thomas Massey knowingly permitted the participants to expose themselves.  (Id.).

Thomas Massey argues that, because the public indecency charge against him was ultimately dismissed, the police must have known that they did not have probable cause at the time of the original citation.  The fact that a defendant is ultimately acquitted of a charge does not mean that probable cause for arrest did not exist, however.  Weinstock v. Wilk, 296 F. Supp. 2d 241, 246 (D. Conn. 2003).  The interviews cited in Sergeant Webb's affidavit, coupled with the photographs depicting the nudity, gave Sergeant Webb sufficient probable cause to issue Thomas Massey a citation for public indecency.  As such, I recommend that the city defendants' motion for summary judgment be granted as to

Count 4.[7]

B. Equal Protection

The Masseys allege various violations of the Equal Protection Clause.  They allege that they were singled out for selective enforcement of certain laws, including the winter parking ban and the fire code, were prosecuted for public indecency as a result of the wet t-shirt contest even though the participants were not, were subject to intimidating walk throughs at The Rave, and were threatened with the non-renewal of The Rave's liquor license.  In addition, they allege that the police failed to respond to a burglary at Good Stuff.[8]

---

[7] In the alternative, Sergeant Webb would be entitled to qualified immunity on this claim.  A defense of qualified immunity is established when either the officers actions did not violate clearly established law or when it was objectively reasonable for the officer to believe that his actions did not violate the law.  Poe v. Leonard, 282 F.3d 123, 133 (2d Cir. 2002).  If reasonable officers could disagree about whether the officer's conduct was reasonable, the officer is still entitled to qualified immunity.  Id. In this case, as discussed, probable cause existed.  Even if it could be disputed that Sergeant Webb actually had probable cause to issue the citation, reasonable officers could differ as to the existence of probable cause.  As such, Sergeant Webb is entitled to qualified immunity. Because Thomas Massey has alleged that Officer Tate lied in his affidavit in support of the citation for disorderly conduct, however, the same analysis does not apply.

[8] The Masseys allege that the police followed Kayce Massey repeatedly, and that the police stopped and

"The Equal Protection Clause requires that the
government treat all similarly situated people alike."
<u>Harlen Assocs. v. Inc. Village of Mineola</u>, 273 F.3d 494, 499
(2d Cir. 2001) (citing <u>City of Cleburne v. Cleburne Living
Ctr.</u>, 473 U.S. 439, 439 (1985)).   Equal Protection claims
usually involve discrimination against people based on their
membership in a protected class.   <u>Id.</u>   The Equal Protection
Clause also "bars the government from selective adverse
treatment of individuals compared with other similarly
situated individuals if 'such selective treatment was based
on impermissible considerations such as race, religion,
intent to inhibit or punish the exercise of constitutional
rights, *or malicious or bad faith intent to injure a
person.*'" <u>Bizzarro v. Miranda</u>, 394 F.3d 82, 86 (2d Cir.

---

threatened both of them.  They do not allege that they were
subject to improper stops, and appear to present these
claims as evidence of the city defendants' personal animus
toward them.  The Masseys also allege that the police
regularly and intentionally pulled people over into the Good
Stuff parking lot.  The Masseys do not dispute that the
police had a legitimate speed trap near Good Stuff, nor do
they allege that they or their employees were stopped or
that any of the traffic stops were illegitimate.  Again, the
evidence of the stops seems to be offered as circumstantial
evidence of personal animus toward the Masseys.  As the
Masseys have failed to show that they were treated
differently than similarly situated people on any of their
claims, the existence or absence of personal animus is not
an issue.

21

2005) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980).  Finally, the Supreme Court has recognized that the Equal Protection Clause also bars disparate treatment of similarly situated people when there is no rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

In order to establish a prima facie claim for an Equal Protection violation based on either personal animus or lack of rational basis, a plaintiff must show proof of both disparate treatment and impermissible motivation.  Bizzarro, 394 F.3d at 87.  The plaintiffs must show proof that they were treated differently than others who were similarly situated.  Id.  In addition, plaintiffs must be able to show proof that the disparate treatment was caused by an impermissible motive.  Id.  In contrast to an Equal Protection claim based on membership in a protected class, in "class of one" violations the similarity inquiry and the equal protection inquiry "are virtually one and the same." Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005). Plaintiffs must be able to show, therefore, that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree

22

that would justify the differential treatment on the basis
of a legitimate government policy" and that "the similarity
in circumstances and difference in treatment are sufficient
to exclude the possibility that the defendant acted on the
basis of a mistake." Id. It is not sufficient to allege
circumstantial evidence of disparate treatment. Id.

With respect to all of the claims in this case, the
Masseys have failed to establish evidence of at least one
element. The Masseys allege that they were subject to
intimidating walk throughs, were subject to a more rigorous
inspection by the fire inspector, were singled out for
enforcement of the winter parking ban, and that the police
failed to respond to an alarm at Good Stuff. They provide
no evidence, beyond bare allegations, that other bars were
not subject to the same walk throughs in number or manner,
that other businesses were subject to less rigorous fire
inspections, and that other people were not ticketed during
the winter parking ban. Unsupported allegations are not
sufficient to withstand a motion for summary judgment.
Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14,
18 (2d Cir. 1995). In addition, they provided no evidence,
beyond bare allegations, that the police's failure to

23

respond to the alarm was motivated by malice, rather than an oversight. The fact that police officers did respond to a second call, investigated the burglary, and caught the perpetrators further refutes the required showing of malice.

The Masseys further allege that the threatened non-renewal of The Rave's liquor license was motivated by personal animus. At the time the letter was sent, Thomas Massey was facing two separate criminal charges. The city defendants have presented testimony that the Liquor Board called Thomas Massey in to discuss the fact that criminal charges were pending against him, and that, if those charges resulted in convictions, certain conditions may have been placed on The Rave's liquor license. (Paper 35, Ex. D at 18-30). There was also testimony that other bar owners who were also facing criminal charges received similar letters and had to come before the Liquor Control Board. (Id. at 15-16; 31-32). The Masseys do not refute this evidence. As such, they are lacking any evidence that they were treated differently from similarly situated individuals.

Thomas Massey's claim that he was wrongfully prosecuted for indecency and assault similarly fails. As already discussed, probable cause supported the arrest on each of

those charges.  To state a claim for malicious prosecution
under Vermont law, a plaintiff must allege facts that show
that the prosecution was with malice, was without probable
cause, and that the proceedings terminated in his favor.
Tveraas v. Coffey, 818 F. Supp. 75, 79 (D. Vt. 1993);
Condosta v. Grussing, 144 Vt. 454, 458 (1984).  The assault
charge was dismissed without prejudice by the state only
after he agreed to make a donation to Voices Against
Violence.  (Paper 35, ¶ 107; Paper 44, ¶ 107).  This is not
a termination in his favor, and as such he was not
maliciously prosecuted for disorderly conduct.  In addition,
he presents no evidence that other people involved in
altercations in the street during the late night or early
morning hours are not prosecuted for disorderly conduct.

Thomas Massey has also not presented sufficient
evidence to show that he was prosecuted for public indecency
in violation of the Equal Protection Clause.  He presents no
evidence as to whether any other bar owners held wet t-shirt
contests in which participants exposed themselves, and if
they did, whether those bar owners were prosecuted.  He does
not dispute the fact that the owner and bartender of a rival
bar were prosecuted under the public indecency ordinance.

25

(Paper 35, ¶ 97; Paper 44, ¶ 97).  He argues instead that
the rival bar was not prosecuted for posting pictures from
The Rave's wet t-shirt contest.  Chief Patterson testified
in his deposition that the rival bar was not charged because
the police had heard a rumor that the pictures were posted,
but had not had any hard evidence to substantiate that fact.
(Paper 35, Ex. F at 43).  He further testified that no
charges were brought because the incident involved pictures
rather than live nudity.  (Id.).  Because the incidents
involved a different set of facts, Thomas Massey has again
failed to demonstrate that he was treated differently from
similarly situated people.

Thomas Massey also alleges that he was treated
differently from the participants in the contest, because
they were not charged.  He does not dispute that the
participants were intoxicated at the time of the contest.
(Paper 35, ¶ 79; Paper 44, ¶ 79).  In addition, the
participants would have been charged under a different
section of the ordinance, for actually exposing themselves,
while Thomas Massey was charged with permitting them to
expose themselves.  Again, the dancers are not sufficiently
similar to Thomas Massey to sustain an Equal Protection

claim.

   C. Harassment

   The Masseys also assert a general claim for harassment,

ostensibly under Section 1983.  Section 1983 provides that a

person may bring a lawsuit for damages against

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws.

42 U.S.C. § 1983.  Section 1983 is not a source for

substantive rights, but merely a method of vindicating the

rights provided elsewhere.  Patterson v. County of Oneida,

375 F.3d 206, 225 (2d Cir. 2004).

   In this case, the Masseys rely on the fact that The

Rave was subject to walk throughs and the fact that Thomas

Massey was cited for public indecency on Christmas Eve to

allege a claim for harassment.  The Masseys do not contest

the fact that the walk throughs were legal, but object to

the manner in which the officers conducting the walk

throughs acted.  (Paper 35, ¶ 111; Paper 44, ¶ 111-13).

Even accepting Thomas Massey's characterization of the walk

throughs as true, however, he has not stated a claim under

27

Section 1983.  The same holds true for the timing of the citation.  The Masseys also appear to base the harassment claim on their unlawful arrest and equal protection claim. As already noted, the Masseys have not presented sufficient evidence to support these claims.  In addition, they present no evidence, beyond the fact that they had several encounters with the police and unsupported evidence of animosity toward their businesses, that any of the encounters had an impermissible motivation.  As such, Count 3, the claim for harassment cannot survive summary judgment.

D.  <u>Conspiracy to Violate Civil Rights</u>

The Masseys next allege that the city defendants conspired to violate their civil rights.  Section 1985 creates a cause of action when two or more people conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . ."  42 U.S.C. § 1985(3).  A claim under Section 1985 requires a showing of class-based animus.  <u>Jews for Jesus, Inc. v. Jewish Community Relations Council, Inc.</u>, 968 F.2d 286, 291 (2d Cir. 1992).  It is not clear that Section 1985 applies to cases involving an

alleged class of one.  See, e.g., C & H Co. v. Richardson,
78 Fed. Appx. 894, 901-902 (4th Cir. 2003) (noting that
Section 1985 does not appear to apply to class of one
cases); Burns v. State Police Assoc. of Mass., 230 F.3d 8,
12, n.4 (1st Cir. 2000) (same).  Even assuming that Section
1985 does apply to a class of one, however, the Masseys
present no evidence that similarly situated people were
treated in a different manner.

Finally, the Masseys have failed to allege that
multiple actors conspired against them.  Instead, they claim
that the City of St. Albans and its various employees have
conspired against them.  This is not sufficient to state a
cause of action under Section 1985.  See Nat'l Cong. for
Puerto Rican Rights by Perez v. City of New York, 75 F.
Supp. 2d 154, 168-69 (S.D.N.Y. 1999) (dismissing Section
1985 claim when all defendants were employees of the city of
New York); Frooks v. Town of Cortland, 997 F. Supp. 438, 456
(S.D.N.Y. 1998) (dismissing a claim under Section 1985 when
plaintiff alleged that a municipality and its employees
conspired against him).  As such, their claim under Section
1985 must fail.

E. Negligence and Negligent Supervision

The city defendants argue, and the Masseys admit, that the negligence and negligent supervision claims arise out of the other claims in this suit.  To establish a prima facie case of negligence, a plaintiff must make a showing that the defendants owed the plaintiff a duty, that duty was breached, the plaintiff suffered harm, and the breach of duty was a proximate cause of the harm.  Rubin v. Town of Poultney, 168 Vt. 624, 625 (1998).  The Masseys have failed to establish any of their claims against any of the defendants, and have therefore failed to show any evidence of a breach of duty.  In addition, municipalities may not be held liable for actions of their employees alleged to be unconstitutional solely on the basis of respondeat superior. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). To prevail in such an action, a plaintiff must show that the municipality had an official policy or custom that caused the plaintiff to be subjected to a denial of a constitutional right.  Id.  The Masseys have failed to make a sufficient showing that they were subject to a denial of constitutional rights; as such, their negligence claim should be dismissed.

Motion to Amend

The Masseys have also made a motion to amend the
complaint to add a cause of action for malicious prosecution
of the public indecency claim.  The city defendants oppose
this motion, arguing that the Masseys delayed too long
before requesting the amendment.

After the answer has been served, the plaintiff may
amend the complaint "only by leave of court or by written
consent of the adverse party; and leave shall be freely
given when justice so requires."  Fed. R. Civ. P. 15(a).  A
motion to amend may be denied because of undue delay,
however.  Zahra, 48 F.3d at 685.  In Zahra, the Second
Circuit affirmed the denial of an amendment that was filed
two and a half years after the initial complaint was filed,
citing undue delay.  Id. at 685-86.

In this case, the initial complaint was filed in
September 2003, a year and a half before this amendment was
filed.  Discovery in this matter has closed.  The Masseys
argue that they did not realize that the city defendants
would argue that probable cause supported Thomas Massey's
arrest on public indecency, and therefore they must be
permitted to add the malicious prosecution claim.  As the
city defendants point out, however, the existence of

31

probable cause is a standard defense to a claim of unlawful arrest.  The Masseys further argue that the amendment will not prejudice the city defendants, because it is a "logical extension" of the unlawful arrest claim.  The fact that malicious prosecution is a logical extension of an unlawful arrest claim makes the Masseys' delay in seeking to add the claim all the more puzzling.  Because discovery has closed, and because the Masseys have not presented an adequate reason for the lengthy delay, the motion to amend is DENIED.

Conclusion

For the foregoing reasons, I recommend that the city defendants' motion for summary judgment (Paper 25) be GRANTED as to all counts.  In addition, the Masseys' motion to amend the complaint (Paper 33) is DENIED.

Dated at Burlington, in the District of Vermont, this 22nd day of August, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all

parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).